# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOHNNY JONES,

    Petitioner,

vs.

RENEE BAKER, *et al.*,

    Respondents.

Case No. 3:15-cv-320-HDM-WGC

**ORDER**

This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by a Nevada state prisoner. Before the Court is respondents' motion to dismiss (ECF No. 9), response, and reply. Also before the Court are petitioner's motions for extensions (ECF Nos. 14 & 18), petitioner's motion to supplement his response to the motion to dismiss (ECF No. 20), petitioner's motion for sanctions (ECF No. 17), petitioner's "motion for equitable tolling and/or an evidentiary hearing" (ECF No. 26), and responses and replies to these motions.

**I. Background**

On February 20, 2004, in the Eighth Judicial District Court for the State of Nevada, an indictment was filed, charging petitioner with conspiracy to commit robbery (Count 1), three counts of burglary while in possession of a deadly weapon (Counts 2, 4, & 6), and three counts of robbery with use of a deadly weapon (Counts 3, 5, & 7). (Exhibits 1 & 2).[1] Petitioner was appointed

---

[1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 10 & 25.

counsel Betty Allen, but on May 24, 2004, petitioner stated that he wanted to represent himself. (Exhibit 5). On June 4, 2004, the state district court conducted a *Faretta* canvass, granted petitioner's request to represent himself, and admonished petitioner regarding appropriate behavior he must exhibit at trial. (Exhibit 6).

By December 1, 2004, petitioner decided he no longer wanted to represent himself. Betsy Allen was reappointed as counsel. (Exhibit 8). Three months later, petitioner requested that Ms. Allen be removed as his counsel. The court informed petitioner that he could file a motion to represent himself and the court would conduct another *Faretta* canvass. (Exhibits 10, 11 at p. 9). However, the court indicated that it would not appoint another attorney. (Exhibit 10). Apparently unsatisfied with the court's response, petitioner began to interrupt and speak over the court. (Exhibit 11, at p. 10). The court informed petitioner than due to his disruptive behavior, it would duct tape his mouth it he behaved the same way the next time he appeared in court. (Exhibit 11, at pp. 10-12). Even after this admonishment, petitioner continued to interrupt until the court ordered him removed. (Exhibit 11, at p. 11). The court noted that petitioner was being verbally abusive to his counsel as well. (*Id.*).

On June 22, 2005, Ms. Allen filed a motion to withdraw as counsel because petitioner was verbally abusive toward her. (Exhibit 15, at p. 3). The court granted the request based on petitioner's verbal abuse, noting that petitioner referred to Ms. Allen as a "bitch" and he had continuously attempted to inject error into the proceedings. (Exhibit 15, at p. 4). Petitioner then told the Judge Jennifer Togliatti to "shut your mouth" and called the judge a "stupid bitch." (Exhibit 15, at p. 6). Judge Togliatti again warned petitioner that it would use duct tape and a stun belt to ensure compliance with court rules. (Exhibit 15, at p. 6). Petitioner responded by directing further obscenities at Judge Togliatti. (Exhibit 15, at p. 6). The court made findings that petitioner's behavior was threatening to the court and that it was concerned petitioner would become physically violent toward whomever was next appointed as his counsel. (Exhibit 15, at p. 8). It was also noted in court minutes that petitioner made physical threats to his counsel, Mr. Waterman, which caused him to withdraw. (Exhibit 16).

On June 24, 2005, Judge Togliatti determined that petitioner's attempts to bias the court by being disrespectful and verbally abusive required the judge to recuse herself. (Exhibit 16). Judge Togliatti filed a notice of reassignment to another department that day. (Exhibit 17). Petitioner's case was reassigned to Judge Stewart Bell. (Exhibit 17). On June 28, 2005, Frank Kocka was appointed to represent petitioner. (Exhibit 16). On August 25, 2005, at a status check four days before trial, petitioner was again disruptive and had to be removed from the courtroom. (Exhibit 18). The court indicated that the case had been reassigned because of petitioner's disruptive behavior and that if it became necessary, the court would place restraints on petitioner. (Exhibit 18).

During trial, petitioner continued his disruptive behavior. As Judge Bell entered the courtroom, petitioner stood up and gave the Judge a Nazi-style salute and said "Heil Hitler." (Exhibits 18 & 33, at p. 11). Petitioner insisted on appearing at trial in his jail clothes and refused to change into civilian clothing. (Exhibit 18 & 33, at p. 12). The court warned petitioner about his inappropriate behavior and the court's possible use of duct tape. (Exhibits 18 & 33, at p. 14). Petitioner then requested to represent himself by speaking over the court, and the court denied his request. (Exhibit 18).

The court brought the prospective jury panel, and petitioner continued to disrupt the proceedings by not letting the court speak or inquire of the panel. (Exhibits 18 & 33, at p. 23). The court excused the jury and ordered that petitioner be handcuffed and that his mouth be duct taped. (Exhibits 18 & 33, at p. 23). Counsel objected, but the court overruled the objection and stated that, given petitioner's history of disruption and his actions in court that day, petitioner would continue to disrupt. (Exhibits 18 & 33, at p. 23). Still outside the presence of the jury. The court gave petitioner two options: to go back to jail or to stay in court and behave himself. (Exhibits 18 & 33, at p. 23).

The prospective jury panel was brought back into the courtroom. (Exhibit 18; Exhibit 33, at p. 24). While handcuffed, petitioner managed to stand up, turn, and throw trial counsel's notebook at the jury panel, striking several panel members. (Exhibit 18; Exhibit 33, at p. 24). The jury was again excused and petitioner was removed from the courtroom. (Exhibit 18; Exhibit 33, at p. 32).

Counsel requested a new jury pool. The court denied the request, finding that based on his history, petitioner would do the same thing with a new jury panel. (Exhibit 18; Exhibit 33, at pp. 32-33). The court then weeded out jurors who indicated they would be biased against petitioner because of his behavior. (Exhibit 18; Exhibit 33, at p. 33). Counsel and the state were both given the opportunity to voir dire the entire panel as to anyone who would be prejudiced by petitioner's actions, and two potential jurors were excused because they indicated they could not sit in fair judgment of petitioner. (*Id.*).

On the second day of trial, petitioner was brought to court and given the option to change into civilian clothing but again refused. (Exhibit 19). The court informed petitioner that he could remain in the courtroom without handcuffs as long as he behaved. (Exhibit 19). The trial concluded without further disruption from petitioner. (Exhibit 19).

On August 30, 2005, the jury found petitioner guilty of conspiracy to commit robbery, three counts of burglary, and three counts of robbery. (Exhibit 19). On November 1, 2005, petitioner was sentenced as follows: Count 1, a minimum of 24 months and maximum of 60 months; Count 2, a minimum of 24 months and maximum of 60 months; Count 3, a minimum of 48 months and maximum of 120 months; Count 5, a minimum of 48 months and maximum of 120 months; Count 6, a minimum of 48 months and maximum of 120 months; and Count 7, a minimum of 48 months and maximum of 180 months. Counts 4 and 5 were to run concurrent to each other, but consecutive to Counts 1, 2, and 3. Counts 6 and 7 were to run concurrent to each other, but consecutive to Counts 4 and 5. (Exhibit 20). The judgment of conviction was filed on November 18, 2005. (Exhibit 22).

On January 23, 2006, petitioner filed a *pro se* notice of appeal from the judgment of conviction. (Exhibit 23). On March 7, 2006, the Nevada Supreme Court dismissed the appeal as untimely. (Exhibit 26). Remittitur issued on April 4, 2006. (Exhibit 27).

On January 22, 2007, petitioner filed a post-conviction habeas petition in the state district court. (Exhibit 28). By written order filed March 20, 2007, the state district court summarily denied the petition without conducting a hearing. (Exhibit 29). On May 21, 2007, petitioner filed a notice of appeal. (Exhibit 30).

On November 8, 2007, the Nevada Supreme Court entered an order affirming in part, reversing in part, and remanding. (Exhibit 31). The Nevada Supreme Court affirmed the summary denial of petitioner's claim that counsel was ineffective for failing to gather witnesses and evidence. The Court concluded that the state district court erred when it summarily denied petitioner's claim that his counsel deprived him of a direct appeal – this claim was remanded with instructions to the state district court to conduct an evidentiary hearing. The Nevada Supreme Court noted that petitioner claimed that the state district court erroneously denied his request to represent himself at trial, that the jurors were biased and should have been dismissed when he threw documents at them, and that he was prejudiced by being handcuffed and having his mouth taped shut at trial. The Court noted that such matters were appropriate for direct appeal, and that if the state district court concluded that petitioner was not deprived of his right to a direct appeal, it should enter an order disposing of all claims. (Exhibit 31). Remittitur issued on December 4, 2007. (Exhibit 32).

On January 10, 2008 and January 31, 2008, the state district court conducted an evidentiary hearing to determine whether trial counsel Kocka deprived petitioner of his right to a direct appeal. (Exhibits 33 & 34). On September 18, 2008, the state district court announced that petitioner was not denied his right to a direct appeal. (Exhibit 34A). In a written order filed November 7, 2008, the state district court ruled that petitioner was not deprived of his right to a direct appeal and dismissed his claims. (Exhibit 36). Petitioner filed a notice of appeal. (Exhibit 37). On May 27, 2009, the Nevada Supreme Court reversed, holding that petitioner was denied his right to appeal. (Exhibit 38, at pp. 2-4). The case was remanded with instructions for the state district court to appoint counsel to assist petitioner in the filing of a post-conviction petition raising all direct appeal issues pursuant to the remedy set forth in *Lozada v. State*, 110 Nev. 349, 871 P.2d 944 (1994). (Exhibit 38, at p. 5). Remittitur issued on June 23, 2009. (Exhibit 39).

On August 26, 2009, petitioner filed a *pro se* motion for the withdrawal of Martin Hart as his attorney, or in the alternative, a request for records and court documents. (Exhibit 40). On the same date, Martin Hart filed a motion to withdraw as petitioner's counsel. (Exhibit 41). On August 27, 2009, counsel Hart filed a request for 2005 trial transcripts at state expense. (Exhibit 42). On January 30, 2010, the court denied the motion. (Exhibit 43). On May 26, 2010, petitioner's

attorney filed a post-conviction habeas petition pursuant to *Lozada*, which raised direct appeal claims and ineffective assistance of counsel claims. (Exhibit 44). After filing the petition, Mr. Hart withdrew as counsel.

On December 13, 2010, Luke Ciciliano entered a notice of appearance on behalf of petitioner. (Exhibit 45). As of August 11, 2011, counsel Ciciliano had not filed a supplemental petition, so the court removed him as counsel. (Exhibit 46). On August 18, 2011, David Amesbury confirmed as petitioner's counsel and was ordered to file a supplemental petition. (Exhibit 47). On March 13, 2012, John Parris confirmed as petitioner's new counsel. (Exhibit 48).

On September 22, 2013, petitioner, through counsel Parris, filed an amended post-conviction petition which contained direct appeal claims pursuant to *Lozada*, as well as claims of ineffective assistance of counsel. (Exhibit 49). On January 17, 2014, the State filed its response to the amended petition. (Exhibit 50). On March 31, 2014, the state district court filed a written order denying the petition. (Exhibit 52).

Petitioner appealed the denial of his *Lozada* petition. On September 30, 2014, petitioner filed a fast track statement in the appeal. (Exhibit 54). On November 18, 2014, the State filed its fast track response. (Exhibit 55). On March 11, 2015, the Nevada Supreme Court filed an order affirming the denial of the *Lozada* petition. (Exhibit 56). The Nevada Supreme Court rejected petitioner's claim that the district court violated his rights to due process, a fair trial, and an impartial jury by failing to properly investigate his competency to assist counsel throughout the proceedings. (Exhibit 56, at pp. 1-2). The Court also rejected petitioner's claim that the district court violated his rights to due process, a fair trial, and an impartial jury by handcuffing and gagging him during the first day of trial. (*Id.*, at pp. 2-4). The Court rejected petitioner's claim that the district court erred in denying his second request to represent himself at trial. (*Id.*, at p. 4). Lastly, the Nevada Supreme Court rejected petitioner's claims that trial counsel was ineffective for failing to investigate or present evidence of his incapacity and failure to object to hearsay. (*Id.*, at pp. 5-6). Remittitur issued on April 7, 2015. (Exhibit 57).

On June 18, 2015, petitioner filed another *pro se* state habeas petition. (Exhibit 58). The petition alleged ineffective assistance of counsel during his *Lozada* appeal. Petitioner also alleged

ineffective assistance of counsel because counsel did not argue that his case should be reversed based on missing or allegedly destroyed transcripts. (*Id.*). On September 22, 2015, the state district court filed a written order denying the petition. (Exhibit 61). On October 20, 2015, petitioner filed a notice of appeal from the denial of the petition. (Exhibit 62). The matter is pending before the Nevada Supreme Court.

Petitioner dispatched his federal habeas petition to this Court on June 14, 2015. (ECF No. 1-1). Respondents have filed a motion to dismiss. (ECF No. 9). Petitioner has also filed the following: motions for extensions (ECF Nos. 14 & 18), a motion to supplement his response to the motion to dismiss (ECF No. 20), a motion for sanctions (ECF No. 17), and a "motion for equitable tolling and/or an evidentiary hearing" (ECF No. 26). The Court now considers all pending motions, responses, and replies to these motions.

**II. Discussion**

  **A. Petitioner's Motions for Extensions and Motion to Supplement Response**

Respondents filed a motion to dismiss the petition on December 22, 2015. (ECF No. 9). Petitioner filed a motion to extend time (ECF No. 14) and on January 15, 2016, petitioner with a response to the motion to dismiss (ECF No. 15). Respondents filed a reply. (ECF No. 16).

On February 8, 2016, petitioner filed a second motion for an extension of time. (ECF No. 18). On the same date, petitioner filed a motion to supplement his response to the motion to dismiss, along with his supplemental response. (ECF Nos. 20 & 20-1). Respondents do not oppose petitioner's motion for an extension. (ECF No. 22, at p. 2). On February 25, 2016, respondents have filed an opposition to petitioner's supplement. (ECF No. 24). Good cause appearing, petitioner's motions for extension of time are granted, *nunc pro tunc*. The Court grants petitioner's motion to file a supplemental response to the motion to dismiss, and the Court regards respondents' filing of February 25, 2016 as a sur-reply to petitioner's supplemental opposition.

  **B. Respondents' Motion to Dismiss**

    **1. Petition is Untimely under the AEDPA**

Respondents have filed a motion to dismiss the petition. (ECF No. 9). Respondents contend that the federal petition is untimely. The Antiterrorism and Effective Death Penalty Act (AEDPA)

amended the statutes controlling federal habeas corpus practice to include a one-year statute of limitations on the filing of federal habeas corpus petitions. With respect to the statute of limitations, the habeas corpus statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d).

In adopting the AEDPA, Congress imposed a one-year statute of limitations on the filing of a federal habeas petition. 28 U.S.C. § 2244(d)(1). Unless a claim is entitled to delayed accrual under 28 U.S.C. § 2244(d)(1)(B)-(D), the starting date for the AEDPA statute of limitations is based on the finality of the judgment of conviction under 28 U.S.C. § 2244(d)(1)(A). *See Mardesich v. Cate*, 668 F.3d 1164, 1169-71 (9th Cir. 2012). For purposes of the AEDPA limitations period, "a judgment becomes 'final' in one of two ways – either by the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment, or by the expiration of the time to seek such review, again from the highest court from which such direct review could be sought." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir.

2001). Once the judgment of conviction becomes final, the petitioner has 365 days to file a federal habeas petition, with tolling of the time for filing during the pendency of a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment. 28 U.S.C. § 2244(d)(1), (2).

A criminal defendant in Nevada has thirty days from the entry of judgment to file his notice of appeal. Nev. R. App. P. 4(b). If the defendant does not seek direct review from the appellate court, the conviction becomes final when the time for seeking such review expires. 28 U.S.C. § 2244(d)(1)(A); *Hemmerle v. Schriro*, 495 F.3d 1069, 1073-74 (9th Cir. 2007); *Wixom v. Washington*, 264 F.3d at 898. Once the judgment of conviction is final, the defendant has one year to file a federal habeas petition. 28 U.S.C. § 2244(d).

An application for state post-conviction relief does not toll the AEDPA statute of limitations where the petitioner files it after the AEDPA statute of limitations has expired. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003); *Jimenez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). The Ninth Circuit has held that, where a Nevada petitioner has pursued a *Lozada* petition, the date of the conclusion of direct review for purposes of § 2244(d)(1)(A) remains the expiration of the direct appeal time, rather than the expiration of the time for seeking certiorari after the conclusion of the later *Lozada* proceeding. *Randle v. Crawford*, 604 F.3d 1047 (9th Cir. 2010), *cert. denied, Randle v. Skolnik*, 131 S.Ct. 474 (2010).

In this case, the state district court entered the judgment of conviction on November 18, 2005. (Exhibit 22). Petitioner did not file a timely notice of appeal, resulting in the Nevada Supreme Court's dismissal of his direct appeal for lack of jurisdiction. (Exhibits 23 & 26). Petitioner's conviction became final on Monday, December 19, 2005, when the time for petitioner to file a timely notice of appeal expired. The AEDPA statute of limitations period began to run on the following day, December 20, 2005. This gave petitioner 365 days, until December 18, 2006, to file a timely federal petition. The first page of the federal habeas petition indicates that the petition was dispatched (given to prison staff for mailing) to this Court on June 14, 2015. (ECF No. 5, at p. 1, item 5). This Court deems the petitioner's federal petition to be filed June 14, 2015. *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (pursuant to the "mailbox rule," federal courts deem

the filing date of a document as the date that it was given to prison officials for mailing).  The federal petition was filed well after the expiration of the one-year AEDPA statute of limitations.  The Court notes that petitioner is not entitled to statutory tolling during the time in which his state habeas proceedings were pending because petitioner's first state habeas petition was filed on January 22, 2007, after the expiration of the AEDPA statute of limitations.  *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (an application for state post-conviction relief does not toll the AEDPA statute of limitations where the petitioner files it after the AEDPA statute of limitations has expired).

### 2.  No Delayed Accrual under 28 U.S.C. § 2244(d)(1)(B)

Petitioner asserts that his petition is timely because of his attorney's failure to file a timely notice of appeal from his judgment of conviction.  Petitioner argues that his counsel's failure to file an appeal "prevented him from filing a 2254 petition until he filed state petitions to resolve such issues for exhaustion purposes."  Petitioner argues that counsel's failure to file an appeal was an impediment under § 2244(d)(1)(B), and consequently, the AEDPA limitations period did not commence until the Nevada Supreme Court removed said impediment on May 27, 2009, when it held that petitioner was denied his right to appeal and remanded the case for the appointment of counsel to file a *Lozada* appeal on his behalf.  (ECF No. 20-1).

Where the government created an impediment to the filing of a federal habeas petition in violation of the Constitution or laws of the United States, the statute of limitations begins to run on the date that such impediment is removed.  28 U.S.C. § 2244(d)(1)(B).  Section 2244(d)(1)(B) requires not merely a showing of a violation of the constitution or laws of the United States but instead a showing of the violation that creates an "impediment to *the filing of an application*."  (emphasis added).  Under established Ninth Circuit law, when a petitioner alleges he was prevented from accessing the court as a means to delay the start of the limitations period in federal habeas proceedings, he must demonstrate that the alleged impediment "altogether prevented him from presenting his claims in *any* form, to *any* court."  *Ramirez v. Yates*, 571 F.3d 993, 1000-1001 (9th Cir. 2009).  "A petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition." *Bryant v. Schriro*, 449 F.3d 1056, 1060 (9th Cir.

-10-

2007); *see also Randle v. Crawford*, 604 F.3d at 1057 (petitioner failed to establish a causal nexus between counsel's failure to file a notice of appeal and petitioner's failure to file a timely federal habeas petition). In the instant case, petitioner has failed to show that his trial attorney's failure to file a notice of appeal altogether prevented him from presenting his claims in any forum to any court, because he filed his first motion to proceed *in forma pauperis* and supporting affidavit in state district court on April 25, 2006. (Exhibits 63 & 64). Petitioner filed his second *in forma pauperis* motion and supporting affidavit in state district court on December 12, 2006. (Exhibits 65 & 66). Petitioner has failed to show that he was prevented from filing a state habeas petition or a federal habeas petition prior to the actual filing of his first state habeas petition on January 22, 2007. (Exhibit 28). Filing a state habeas petition earlier would have tolled the AEDPA limitations period. Petitioner also could have filed a protective federal habeas petition and requested the Court to stay the proceedings while he proceeded to state court to exhaust his claims.

Petitioner also asserts that the *Lozada* remedy itself was a state-created impediment to his filing of a timely federal habeas petition. Petitioner asserts that he could not file a federal petition until he exhausted his claims in state court. This argument lacks merit because, as mentioned earlier, petitioner could have filed a protective federal habeas petition and asked the Court to stay proceedings while he exhausted his claims in state court. The Nevada Supreme Court's order of March 7, 2006, informed petitioner of counsel's failure to file a timely notice of appeal. (Exhibit 26). Remittitur issued on April 4, 2006. (Exhibit 27). Petitioner then waited until January 22, 2007, to file his first state habeas petition. (Exhibit 28). Petitioner provides this Court with no explanation why it took him ten months after the Nevada Supreme Court's order to file his first state habeas petition. Moreover, petitioner provides no explanation for his failure to file a timely federal habeas petition at any point within that time period. Petitioner fails to establish a causal nexus between the *Lozada* remedy afforded by the Nevada state courts and his ability to file a timely federal petition. The Nevada state courts did not impede petitioner's ability to file a timely federal petition, thus petitioner is not entitled to delayed accrual of the statute of limitations pursuant to 28 U.S.C. § 2244(d)(1)(B).

/ / / / / / / / /

### 3. No Entitlement to Equitable Tolling

In his supplemental response (ECF No. 20-1) and motion for equitable tolling (ECF No. 26), petitioner asserts that he is entitled to equitable tolling. The United States Supreme Court has held that the AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). The Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The petitioner bears the burden of demonstrating that he is entitled to equitable tolling. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). "[A] petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence." *Bryant v. Arizona Att. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007). A petitioner "must show that some 'external force' caused his untimeliness, rather than mere 'oversight, miscalculation or negligence.'" *Velasquez v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (quoting *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009)). "[A] garden variety claim of excusable neglect . . . such as a simple miscalculation that leads a lawyer to miss a filing deadline . . . does not warrant equitable tolling." *Holland*, 560 U.S. at 651-52 (internal quotations and citations omitted). A *pro se* petitioner's lack of legal knowledge or sophistication is not, by itself, an extraordinary circumstance warranting tolling. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). A petitioner is not entitled to equitable tolling where the cause of his late filing is incorrect advice from counsel. *Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001).

In his supplemental response, petitioner asserts that he is entitled to equitable tolling based on his attorney's failure to file a timely notice of appeal from this judgment of conviction. Petitioner's conviction was entered on November 18, 2005. (Exhibit 22). Petitioner did not file a timely direct appeal. His conviction became final thirty days later on December 19, 2005. The AEDPA one-year limitation period began to run the following day. Petitioner has not shown how and when he discovered that an appeal had not been filed. On January 17, 2006, petitioner signed a *pro per* notice of appeal from the judgment of conviction, which was filed on January 23, 2006.

(Exhibit 23). On March 7, 2006, the Nevada Supreme Court dismissed petitioner's appeal as untimely. (Exhibit 26). Remittitur issued on April 4, 2006. (Exhibit 27). On January 22, 2007, more than a year after he discovered a notice of appeal had not been filed, nine months after the Nevada Supreme Court issued remittitur on the direct appeal, and 399 days after his conviction became final, petitioner filed a state habeas petition. (Exhibit 28). Petitioner has not shown that his attorney's failure to file a timely notice of appeal prevented him from filing a federal habeas petition. Similarly, in *Randle v. Crawford*, the petitioner sought equitable tolling because his counsel failed to perfect a timely appeal in state court. 604 F.3d at 1057-58. The Ninth Circuit in *Randle* held that petitioner was not entitled to equitable tolling, as follows:

> [T]he alleged negligence of Randle's counsel had little to no bearing on his ability to file a timely federal habeas petition. Counsel's failure to perfect an appeal simply meant that Randle had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action – it did not prevent him from filing the petition.

*Randle*, 604 F.3d at 1058. Here, just as in *Randle*, petitioner's attorney's failure to file a timely notice of appeal in state court was not an "extraordinary circumstance" that prevented petitioner from filing a timely federal habeas petition.

Petitioner also contends that he is entitled to equitable tolling because he was placed on Risperdal in December 2005, shortly after he was sentenced. He claims that "in 2006" the medications adversely affected him. He claims that being under the influence of the medication is an extraordinary circumstance which entitles him to equitable tolling up to January 22, 2007, the date he filed his state habeas petition. Petitioner fails to present any documentation which supports his claim or shows the date that he was allegedly placed on Risperdal or other medications, how long he was on the medication, if he was taken off the medication, and how the medication prevented him from filing his federal petition. Petitioner's claims are belied by the fact that his medications did not prevent him from filing the following pleadings: On January 23, 2006, he filed a notice of appeal from his judgment of conviction. (Exhibit 23). Petitioner does not state how and when he discovered that his attorney had not filed a notice of appeal. The record shows that petitioner filed his first motion to proceed *in forma pauperis* on April 25, 2006, ten days after the

-13-

Nevada Supreme Court issued its April 4, 2006 remittitur. His *in forma pauperis* application and affidavit show that he was able to state his financial status, put his name and return address on the envelope, and address and mail the application to the court. On May 18, 2006, the court granted his application. Petitioner also stated in his January 22, 2007 petition that he had written his attorney, Frank Kocka, several times with no response. Petitioner's statements show that prior to April 25, 2007, the medication did not prevent him from writing to his attorney numerous times and regularly communicating with his family. He has failed, therefore, to meet his burden of showing that his medications were an extraordinary circumstance beyond his control which prevented him from filing a timely federal petition.

Petitioner fails to show that he diligently pursued his rights. Petitioner filed a motion to proceed *in forma pauperis* and supporting affidavit in state district court on April 25, 2006, and later on December 12, 2006. (Exhibits 63, 64, 65, 66). Petitioner thus has failed to show that he was prevented from filing a state habeas petition or a federal habeas petition prior to the actual filing of his first state habeas petition on January 22, 2007. (Exhibit 28). If medication did not prevent petitioner from filing state pleadings, it would not have prevented him from timely preparing and mailing his federal petition. Petitioner's lack of legal knowledge or sophistication is not an extraordinary circumstance warranting equitable tolling. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).

In his motion for equitable tolling and evidentiary hearing, petitioner claims that he is entitled to equitable tolling because the State of Nevada conspired to destroy transcripts of his trial to cover up racist comments made by the judge during trial. (ECF No. 26). The investigation by the Nevada Commission on Judicial Discipline found that petitioner's allegations – that judges conspired to destroy trial transcripts – were false. (ECF No. 26, at Exhibit 2). The Commission's review found that all of the daily hearing/trial transcripts were noted in petitioner's case docket summary report and that the court clerk's office confirmed that petitioner's trial transcripts were complete and filed in the court's record system. The Commission dismissed petitioner's claim of judicial misconduct because there was no reasonable probability that the evidence available for

introduction at a formal hearing could clearly and convincingly establish grounds for disciplinary action against the state court judges. (*Id.*).

Petitioner also alleges that he is entitled to equitable tolling because several state operatives conspired against him to intentionally deny his direct appeal and destroy his trial transcripts. (ECF No. 26). Petitioner has failed to show a causal connection between his allegations and his failure to file a timely federal petition. On January 23, 2006, he filed a notice of appeal from his judgment of conviction. (Exhibit 23). On March 7, 2006, the Nevada Supreme Court dismissed petitioner's appeal as untimely. (Exhibit 26). Petitioner waited over nine months, until January 22, 2007, to file his state habeas petition. (Exhibit 28). Nothing prevented him from filing a federal habeas petition between January 23, 2006, and December 19, 2006. If petitioner was able to file a state petition on January 22, 2007, he could have filed a federal petition by the AEDPA deadline. Again, it is likely that petitioner filed an untimely federal petition because he did not know about the one-year AEDPA limitation period or did not understand its application. Petitioner's lack of legal knowledge or sophistication is not an extraordinary circumstance warranting equitable tolling. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Petitioner has not demonstrated an extraordinary circumstance that prevented him from filing a timely federal habeas petition, and therefore, petitioner is not entitled to equitable tolling.

Additionally, if even petitioner could have established that an extraordinary circumstance prevented him from filing a timely federal habeas petition, petitioner's claim for equitable tolling fails because he has not established that he acted with reasonable diligence in pursing this federal petition. As discussed *supra*, petitioner provides no explanation for the ten month delay between the dismissal of his direct appeal for lack of jurisdiction and the filing of his first state habeas petition. (*See* Exhibits 26 & 28). Significantly, petitioner has failed to establish that he acted with reasonable diligence in pursuing and filing a timely federal habeas petition. In sum, petitioner has failed to establish an extraordinary circumstance that prevented him from filing a timely federal habeas petition and petitioner has failed to establish that he acted with reasonable diligence in pursuing timely federal habeas relief. Petitioner is not entitled to equitable tolling. This action must be dismissed with prejudice as untimely.

Finally, petitioner seeks an evidentiary hearing regarding his claim for equitable tolling. The decision to grant an evidentiary hearing in a federal habeas case is left to the sound discretion of the district courts. *Schiro v. Landrigan*, 550 U.S. 465 (2007). None of petitioner's factual assertions made in his supplemental opposition or in his motion for equitable tolling are supported by actual competent evidence in the record establishing an extraordinary circumstance standing in the way of a timely filing during the relevant time periods relevant to this case. Unsupported factual assertions do not establish a potentially viable basis for equitable tolling. Petitioner's allegations – even if taken as true – fail to establish an extraordinary circumstance preventing him from filing a timely federal habeas petition and his allegations fail to show an excuse for his lack of diligence in pursuing his rights. An evidentiary hearing is therefore not required. *See Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir. 2004) (no need for an evidentiary hearing where the facts alleged do not provide a basis for relief); *Tapia v. Roe*, 189 F.3d 1052, 1056 (9th Cir. 1999) (similar).

**C. Petitioner's Motion for Sanctions**

On January 28, 2016, petitioner filed a motion for sanctions against respondents. (ECF No. 17). Respondents filed an opposition and petitioner filed a reply. (ECF Nos. 21 & 23). In his motion, petitioner seeks sanctions against respondents for attempting to "mislead the Court" by arguing that the *Lozada* procedure is consistent with the United States Supreme Court's decisions and that the Ninth Circuit has not rejected the *Lozada* procedure.

In *Lozada v. State*, the Nevada Supreme Court held that it did not have jurisdiction to conduct a delayed appeal because a procedural mechanism for such a proceeding did not exist under Nevada law. *Lozada*, 871 P.3d at 946.[2] The Nevada Supreme Court held that if a petitioner could establish meritorious claim that counsel was ineffective for failing to file a timely notice of appeal, he would be allowed to raise in a state habeas petition any issues which he could have raised on direct appeal. *Id.* at 950. This is consistent with the United States Supreme Court's

---

[2] In 2009, the Nevada Supreme Court amended the Nevada Rules of Appellate Procedure to allow an out-of-time appeal from a judgment of conviction where there has been ineffective assistance of counsel. *See* Nev. R. App. P. 4(c).

express recognition that a postconviction attack could provide an effective remedy for an earlier loss of the direct appeal right. *See Evitts v. Lucy*, 469 U.S. 387 (1985). Moreover, the Ninth Circuit has recognized Nevada's *Lozada* proceedings as valid. *See, e.g., Randle v. Crawford*, 604 F.3d 1047 (9th Cir. 2010), *cert. denied, Randle v. Skolnik*, 131 S.Ct. 474 (2010) (rejecting petitioner's contention that counsel's failure to file direct appeal constituted extraordinary circumstances entitling him to equitable tolling). Respondents did not mislead the Court. Petitioner's motion for sanctions against respondents is denied.

### III. Certificate of Appealability

District courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts. In order to proceed with his appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* In this case, no reasonable jurist would find this Court's dismissal of the petition as untimely debatable or wrong. The Court therefore denies petitioner a certificate of appealability.

### IV. Conclusion

**IT IS THEREFORE ORDERED** that petitioner's motions for extensions of time (ECF Nos. 14 & 18) are **GRANTED,** *nunc pro tunc.*

**IT IS FURTHER ORDERED** that petitioner's motion to file a supplemental response to the motion to dismiss (ECF No. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that petitioner's motion for sanctions (ECF No. 17) is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner's motion for equitable tolling and an evidentiary hearing (ECF No. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that respondents' motion to dismiss (ECF No. 9) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE** as untimely.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT ACCORDINGLY.**

Dated this 16th day of August, 2016.

HOWARD D. McKIBBEN
UNITED STATES DISTRICT JUDGE